# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | CRIMINAL NUMBER 17-319 |
| | : | |
| LUIS TELLEZ | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Luis Tellez files this memorandum in aid of mitigation at sentencing. The Presentence Investigation Report prepared by United States Probation Officer Jacqueline Widmeier concludes the advisory range is 0-6 months based on a total offense level 6, Criminal History Category I. Given the particular facts and circumstances of this case, the defense suggests that a sentence of time served would best fulfill sentencing goals pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and the subsequent cases reaffirming its holding, and 18 U.S.C. §3553(a).1

## I.   PROCEDURAL HISTORY

On June 15, 2017, the United States Attorney's Office for the Eastern District of Pennsylvania filed an indictment charging Mr. Tellez with one count of Illegal Reentry in violation of 8 U.S.C. § 1326(a). Mr. Tellez entered a guilty plea to the indictment on July 26, 2017. Sentencing is scheduled for August 16, 2017.

---

1 Mr. Tellez was arrested by ICE agents on May 17, 2017. As of the date of his sentencing, he will have been in custody just under three months. However, because he was not transferred to federal custody until June 16, 2017, the Bureau of Prisons will not credit this first month of custody towards any sentence imposed in this case. As such, should the Court adopt the defense's request for a time served sentence, it is respectfully requested that the sentence reflected in the judgment of conviction be noted as time served or 2 months, should the Court wish to sentence Mr. Tellez to a specific term of months equivalent to time served.

## II. MR. TELLEZ'S PERSONAL HISTORY

Mr. Tellez had a life which is similar to most people who stand before this Court awaiting sentencing for this offense. He grew up in poverty and dropped out of school in the 8th grade for financial reasons. At age 13, he relocated to California where he lived with his aunts. Despite being school age, he was never enrolled in schools in the United States.

Once in this country, he immediately began working and consistently maintained employment during the time he was in this country. During his time here, he worked in construction. He worked hard, 6 days a week, 14 hours a day and supported himself while also sending money home to help support his family.

As is common among undocumented aliens, especially those from Mexico, his efforts to cross the border resulted in contacts with Border Control Agents. Also common, is the multiple voluntary departures following these encounters. There is no question that this practice is employed due to the volume of people crossing the border without permission. By that same token, there can be no question that this practice does little, if anything, to discourage border crossings. Even when Border Control Agents increased their deterrence efforts by formally deporting Mr. Tellez, the administrative process was nothing compared to the present criminal prosecution.

His motivation for reentering was his wife and children for whom he was providing financial support. As he remains in custody, he is faced with the added stress of hearing how his incarceration is affecting his children's standard of living. As a result of this, he is firmly resolute to never return to this country. Thankfully, his entire family is in Mexico. This fact will diminish his desire to return to this country. He realizes that he cannot return to this country without risking rearrest and additional, more severe, criminal penalties. Bearing in mind that he

has never been in custody as long as he has been prior to now, this experience has impacted him deeply and has served the deterrent effect that his prior contacts with Border Patrol agents did not achieve. Additionally, he knows that the current political climate supports the implementation of harsher penalties for aliens with histories of prior convictions and deportations, such as he now has as a result of this prosecution. This further reinforces the need for him to refrain from reentering the United States.

### III.     APPLICATION OF THE STATUTORY FACTORS TO THIS CASE

The Court must consider all of the factors identified in 18 U.S.C. §3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing. 18 U.S.C. §3553(a)(1).

####     A.     The Nature and Circumstances of the Offense and History and Characteristics of Mr. Tellez

Mr. Tellez's work history and his motive for the commission of the instant offense, all weigh in favor of a sentence of time served.

####     B.     The Need for the Sentence Imposed to Promote Certain Statutory Objectives

*1.     To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

Mr. Tellez's period of incarceration is especially difficult given his inability to help his family. He was providing his family with much needed income on a monthly basis. The guidelines generally account for harm, but not at all for the motive for committing the offense, which is highly relevant. Mr. Tellez understands that he should not have returned to the United States and is acutely aware of the potential for additional punishment in this and future cases. A sentence of time served would not promote a lack of respect for the law as Mr. Tellez is presently incarcerated and will remain in custody at a minimum until deportation.

As the Court is aware, deportations are not immediate and Mr. Tellez is likely to be incarcerated beyond whatever sentence this Court imposes. A time served sentence represents a within guideline range sentence. Sentences within the guideline range are relatively common for many similarly compelling reasons and do not undermine respect for the law.

2.  *To afford adequate deterrence to criminal conduct.*

A sentence above time served is neither warranted nor necessary to further deter Mr. Tellez from returning. He understands what he would likely face if he returns in the future, which is unfathomable to him given his present guideline range. Mr. Tellez has been incarcerated since May 2017. Mr. Tellez will not receive credit for the first month he was in Immigration custody towards his federal sentence. Mr. Tellez is very much aware of the significant period of incarceration he faces both and now and in the future should he to return again. Moreover, the fact that Mr. Tellez was prosecuted for this offense, in lieu of immediate deportation, should serve as sufficient deterrence.

3.  *To protect the public from further crimes of the defendant.*

Mr. Tellez poses no threat to the public. He will be returned to immigration custody for deportation upon completion of his sentence. Protection of the public is of diminished concern in this case.

**C.  Kinds of Sentences Available**

The range of sentences statutorily available to the Court, including the advisory guidelines range, are listed in Part D of the PSR. This range includes a sentence of incarceration of up to two years, not more than 1 year of supervised release, a fine of up to $250,000. Section 5D1.1(c) discourages the Court from imposing a period of supervised release. It reads as follows: The court ordinarily should not impose a term of supervised release in a case in which supervised

release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment.  Moreover, the Third Circuit recently recognized the presumption against imposing supervised release in cases where the defendant is a deportable immigrant.  See United States v. Azcona-Polanco, __ F.3d __, 2017 WL 3184723, *1 (3d Cir. July 27, 2017).

**IV.     CONCLUSION**

Based on the above reasons, the defense respectfully requests the Court impose a sentence of time served.

                                                  Respectfully submitted,

                                                  s/Maria A. Pedraza
                                                  MARIA A. PEDRAZA
                                                  Assistant Federal Defender

# CERTIFICATE OF SERVICE

I, Maria A. Pedraza, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have electronically served a copy of Defendant's Sentencing Memorandum *via* Electronic Case Filing, upon Kelly Lewis Fallenstein, Assistant United States Attorney, 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

        s/Maria A. Pedraza
        MARIA A. PEDRAZA
        Assistant Federal Defender


DATE: August 16, 2017